(Bradford *v.* Dornseif.)

The two former decisions had settled that an action could not be sustained after the purchaser had been five years in possession. The words are, "no action for the recovery of said lands shall lie, unless the same be brought within five years after the sale thereof for taxes as aforesaid." Nothing can be more plain or positive; the law must be enforced by the Court or repealed by them; it cannot be mistaken nor misunderstood.

All statutes of limitation are made for the protection of those who, without such statute, had no protection. They are useless to those who are safe without them. They must protect those who could not otherwise be protected, or they are useless.

The possession of the defendants began in 1812. They are within the letter and spirit of the act of assembly.

Judgment affirmed.

---

## NAGLE *against* PATTERSON.

A died intestate; his real estate was appraised and confirmed by the Orphans' Court to B, one of his sons; C became the surety of B in the recognizances to the other heirs, when an agreement was made that B should have one-half of the land, and should pay one-half of the recognizances. B and C took possession of the land, and had it divided between them by a line; C being liable to pay B one hundred dollars for the difference in value of the parts. C did not pay the one-half of the recognizances, nor the one hundred dollars to B. C's interest was sold by the sheriff, and B without having tendered a deed to C, or the purchaser, brought an ejectment for the land. *Held:* that he was entitled to recover a verdict, conditioned that it should be released upon the payment of the money within a specified time, which C was bound to pay.

APPEAL from the Circuit Court of *Mifflin* county, held by *Justice Huston.*

This was an action of ejectment in which *Samuel Nagle* was plaintiff, and *John Patterson,* who survived *William C. Kelly,* was defendant. Both parties claimed under the same title.

The land in dispute belonged to *Herman Waltman,* who died intestate, leaving six children, of whom *Samuel Nagle's* wife and *Peter Rice's* wife were two. Upon the application of one of the heirs to the Orphans' Court the land was valued, and subsequently taken at the valuation, by *Samuel Nagle* the plaintiff; who entered into recognizances with *Peter Rice* as his security, for the payment of the shares of the other heirs. Two of the four recognizances entered into, were paid by *Samuel Nagle.* These facts

(Nagle *v.* Patterson.)

having-been established by the plaintiff; the defendant gave in evidence, that at the time the land was taken at the valuation by *Nagle,* an agreement was made between him and *Rice,* that he should take the land, and *Rice* should be his security in the recognizances; that each should have an equal interest in it, and that *Rice* should pay one half of the recognizances;—that *Nagle* and *Rice* both lived on the land, and appointed two men to divide it between them; who did divide it, and awarded, that in addition to the share *Nagle* got, he should receive from *Rice* one hundred dollars. *Patterson* and *Kelly* subsequently obtained a judgment against *Rice* and issued execution, and levied it upon "all the right, title and interest of defendant, in a tract of land in *Lach* township, containing," &c. which was the whole tract. It was afterwards sold on a *venditioni exponas,* and bought by *Patterson* and *Kelly.* It did not appear that *Rice* had paid any part of the recognizances, or of the one hundred dollars.

The jury, by the direction of the court, found the following verdict:

"We find for the plaintiff, he to file in the office of the prothonotary of this court, a deed from himself to *John Patterson,* before he takes out execution; and further find that defendant be released from this verdict, on paying to the prothonotary of this court, the amount of the two remaining recognizances, or so much of them as he shall fail to produce before the prothonotary of this court, legal evidence of having already been paid by *Rice* or himself; which money is to be applied to the discharge of said two recognizances, or said money, or so much thereof to go to *Samuel Nagle* as he shall show the prothonotary has been paid by him. And also the defendant to pay the prothonotary, at the same time, the sum of $100, with interest from the first day of January, 1817, unless he can show to the prothonotary, that the same or some part of it has been paid by *Peter Rice* or himself. That to enable the defendant to do these things, there be a stay of execution until the first day of July next, 1831, and upon payment of said moneys and costs of this suit, judgment in this suit to be released."

The defendant moved for a new trial which was refused and he appealed.

*Hale* for appellant.

The plaintiff could not recover without having tendered a deed to the defendant and demanded his money before suit brought. *Rice* was in possession before the sheriff's sale, and was entitled to the possession in the right of his wife, to the one-sixth at all events, and he could not have been turned out of possession by *Nagle,* without an offer on his part to perform his agreement to convey,

(Nagle *v.* Patterson.)

&c. The verdict devolves a duty and power upon the prothonotary which he cannot discharge, but which should have been performed by the jury.

Such a reference may be made by *consent* to the prothonotary, but never by a verdict.

*Alexander* for appellee.

We deny that one cent was ever paid by *Rice* or *Patterson.* The verdict is *conditional* not *special.* The verdict might have been general for the plaintiff; the conditions are for the benefit of the defendant and of which he cannot complain. The *whole* legal title was in the plaintiff, and could only be divested by the defendant's having paid the recognizances, and made proof of that fact. *Rice* was to pay the heirs; *Nagle* was not to pay them, and look to *Rice.* No proof of the payment of a part was made, so as to turn the burden of proof upon us.

*Blanchard* in reply.

When the deed is presented to the prothonotary, who is to judge of its sufficiency? When the evidence of payments is presented, who is to judge of their validity or genuineness? The whole matter of fact in the case to be tried, was referred to the prothonotary. *Nagle* and *Rice* were partners in this transaction, although the land was confirmed to *Nagle*, yet *Rice* was equally interested; *Nagle's* legal title was in trust as to the one half for *Rice* who was equally bound for the amount of the recognizances.

Judgment affirmed.